AMY E. JACKS (#155681)
Law Office of Amy E. Jacks
315 E. 8th St. #801
Los Angeles, CA 90014
Phone: (213) 489-9025
Fax: (213) 489-9027
amyejacks@sbcglobal.net

MARK WINDSOR (#190589)
Law Office of Mark Windsor
65 N. Raymond Ave
Pasadena, CA 91103
Phone: (626) 792-6700
windsorlaw@gmail.com

Attorneys for Defendant
RONNY ROJAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

(02) RONNY ROJAS,

*Defendant*.

Case No. 22-CR-573-FWS

**MOTION TO DISMISS THE INDICTMENT BASED ON THE UNLAWFUL DESIGNATION OF BILAL A. ESSAYLI AS U.S. ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA AND THE UNLAWFUL APPROPRIATION OF FUNDS TO THE OFFICE HE PURPORTS TO LEAD**

**Proposed Hearing Date: October 16, 2025**

Defendant, Ronny Rojas, through his counsel of record, Mark Windsor and Amy E. Jacks, hereby moves the Court to dismiss the instant indictment against him due to the unlawful designation of Bilal A. Essayli as the U.S. Attorney for the Central District of California and

the unlawful appropriation of funding to the office he purports to lead.

Dated: September 11, 2025

Respectfully submitted,
/s/ *Amy E. Jacks*
Amy E. Jacks

/s/ *Mark Windsor*
Mark Windsor

Attorneys for Defendant
RONNY ROJAS

## INTRODUCTION

Defendant Ronny Rojas respectfully submits this motion to dismiss the Superseding Indictment (Doc. 8) based on the unlawful designation of Bilal A. Essayli as U.S. Attorney for the Central District of California in violation of the Appointments Clause of the United States Constitution and the unlawful appropriation of funds to the office he purports to lead in violation of the Appropriations Clause of the United States Constitution.

## DISCUSSION

### I. Designation of Bilal A. Essayli as the U.S. Attorney for the Central District of California Violates the Appointments Clause of the United States Constitution.

The Appointments Clause[1] does not permit the Attorney General to appoint, without Senate confirmation, a private citizen and like-minded political ally to wield the prosecutorial power of the United States. As such, Bilal A. Essayli lacks the authority to conduct this prosecution, which can be taken only by someone lawfully appointed as a federal officer. Essayli is not lawfully appointed and his lack of authority to conduct this prosecution requires that the Superseding Indictment (Doc. 8) be dismissed.

#### A. Relevant Facts

Martin Estrada, the most recent Senate-confirmed U.S. Attorney for the Central District of California, resigned on January 17, 2025.[2] From that date until April 1, then-first assistant

[1] The Appointments Clause provides: "The President … shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

[2] *See Former United States Attorneys*, U.S. Dep't of Justice (updated Apr. 2, 2025), https://perma.cc/5RX9-BLBT.

Joseph McNally served as acting U.S. Attorney. *Id.* Effective April 2, the Attorney General appointed Bilal Essayli as interim U.S. Attorney under 28 U.S.C. § 546(a).[3] The President did not submit Mr. Essayli as a nominee for Senate confirmation, and under § 546(c)(2), his service expired after 120 days on July 30, 2025. Public reports indicate that the judges of this judicial district declined to appoint a U.S. Attorney under § 546(d), but there was no order or announcement.[4]

With similar expiration dates looming in this and at least four other judicial districts, Mr. Essayli disclosed in an interview that his service might continue: "We've got some tricks up our sleeves."[5] Essayli's political allies then began to describe Mr. Essayli as the "Acting United States Attorney." This was, in fact, a "trick" because it circumvented limitations that Congress has imposed on temporary service in important federal offices like U.S. Attorney. The "trick" involved a four-step maneuver that commenced on July 29, the day before the expiration of Essayli's 120-day term limit[6]:

First, the Attorney General appointed Mr. Essayli as "a Special Attorney," citing "the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 515." Ex. 1, at 1.

Second, the Attorney General appointed Mr. Essayli first assistant U.S. Attorney for the Central District of California, "effective upon his resignation as United States Attorney." *Id.*

---

[3] *Bilal A. Essayli Sworn in as United States Attorney*, U.S. Dep't of Justice (updated Apr. 2, 2025), https://perma.cc/FR6U-PCTC.

[4] Mejia, *Trump Administration Maneuvers*, *supra*, https://perma.cc/S79U-A895.

[5] Brittny Mejia et al., *Trump Administration Maneuvers to Keep Essayli as L.A.'s Top Federal Prosecutor*, L.A. Times (July 29, 2025), https://perma.cc/S79U-A895.

[6] The Trump administration has pursued similar maneuvers in at least four other districts: the District of New Jersey, the District of Nevada, the Northern District of New York; and the District of New Mexico.

Third, Mr. Essayli purported to "resign my position as Interim United States Attorney for the Central District of California." Ex. 2, at 1. Yet in the very next (and only other) sentence of his resignation letter, he announced that he "look[s] forward to continuing to lead the U.S. Attorney's Office for the Central District of California." *Id.*

Fourth, the Attorney General ordered that, as first assistant, "Mr. Essayli will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and limitations of the Federal Vacancy Reform Act of 1999." Ex. 1, at 1.

**B. Legal Background**

This motion involves the interplay between the United States Constitution and two statutes: 28 U.S.C. § 546, which governs U.S. Attorney vacancies specifically; and 5 U.S.C. § 3345, which governs Executive Branch vacancies generally.

**1. 28 U.S.C. § 546: Interim Appointment by Attorney General or District Court.**

28 U.S.C. § 541 establishes the position of United States Attorney. That section sets the default rule that U.S. Attorneys must receive Presidential appointment and Senate confirmation (commonly referred to as a "PAS" position). Specifically, under subsection (a), "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."

28 U.S.C.§ 546 covers U.S. Attorney vacancies. The statute allows the Attorney General to make an interim appointment: under subsection (a), "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." Individuals serving as interim U.S. Attorneys are "fully-empowered United States Attorneys" as opposed to "subordinates assuming the role of 'Acting' United States Attorney." *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999), *overruled on other grounds by United*

*States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc).

The Attorney General's § 546(a) appointment authority is time-limited. Under subsection (c), an interim U.S. Attorney may serve no later than for "120 days after appointment by the Attorney General." This 120-day limit was added to the statute in 2007. Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224, 224. When an Attorney General's § 546(a) appointment expires, the authority to appoint an interim U.S. Attorney shifts to the judges of the district court under § 546(d). An interim U.S. Attorney appointed by the district court under subsection (d) may "serve until the vacancy is filled."

**2. 5 U.S.C. § 3345: Acting Service Under the Federal Vacancies Reform Act.**

The Federal Vacancies Reform Act deals with executive branch vacancies more generally and imposes its own limits on the duration and duties of acting federal service. *See* 5 U.S.C. §§ 3345–3349.

Section 3345(a) instructs that a vacancy arises for FVRA purposes when an "officer … whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office." Such an "inability" includes "the expiration of a term of office." *Id.* § 3345(c)(2).

The FVRA provides three options for filling a position on an acting basis. *Id.* § 3345(a)(1)–(3). The first (and default) rule: an already-in-place first assistant can become the acting officer. Under subsection (a)(1), the first assistant in the office "shall perform the functions and duties of the office temporarily in an acting capacity." This provision "fills the role automatically." *Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550, 557 (9th Cir.

2016); *see also NLRB v. SW General, Inc.*, 580 U.S. 288, 296 (2017) (describing this as the "general rule"). The other two options are exceptions to that default rule: there are "two ways the President may override the automatic operation of" this provision and instead select someone other than the then-first assistant. *Hooks*, 815 F.3d at 557. Under subsection (a)(2), "the President (and only the President)" can select another individual as the acting officer, if that other individual is already serving in another office that requires appointment and confirmation. Under subsection (a)(3), "the President (and only the President)" can select another senior government leader as the acting officer if the individual satisfies three conditions: the individual must be currently serving as an executive branch officer or employee in the same agency; the individual must have served in a position in that agency for at least 90 days within the 365-day period preceding the vacancy; and that position must have had a rate of pay equal or greater than the rate provided in the GS-15 scale.

However the acting officer is selected, the statutory scheme limits the time of that acting service. Under § 3346(a)(1), with few exceptions, an acting officer may serve until no later than 210 days after the date the vacancy occurs.

The FVRA also provides a remedy for improperly appointed individuals: nullification. Section 3348(d)(1) provides that "[a]n action taken by any person who is not" properly serving as an acting officer "in the performance of any function or duty of a vacant office … shall have no force or effect." Under subsection (2), such actions "may not be ratified" later.

### C. Continuing to designate Essayli as the U.S. Attorney for the Central District of California violates the Appointments Clause.

Essayli is improperly serving as a non-confirmed U.S. Attorney at least thrice over.

*First*, Essayli satisfies none of the criteria to be an appropriate "acting" official under

the FVRA. He was (1) not an already-in-place first assistant when the vacancy occurred on January 17, 2025; (2) not a Senate-confirmed officer in another role; and (3) not an already-in-place senior official in the U.S. Attorney's Office. So Essayli is not a proper FVRA "acting" officer. His actions thus have no force or effect.

*Second*, and alternatively, Essayli cannot continue serving as interim U.S. Attorney in any capacity after he exhausted the 120-day clock under § 546(c)(2). That more-specific 120-day limit controls over the FVRA's general-purpose provisions here—a reality confirmed by at least three statutory interpretation principles (specific-over-general, the presumption-against-surplusage canon, and the "mischief" rule). Once the administration appoints someone for interim service under § 546(a), that 120-day clock controls, even if that individual is later re-designated for acting service under the FVRA. Because Essayli's 120-day clock expired on July 30, his actions since that date have been taken without lawful authority.

*Third*, Essayli has not been confirmed by the Senate as U.S. Attorney for the Central District of California and he cannot lawfully act as U.S. Attorney.

Under whatever framing, Essayli cannot legally exercise the duties of the U.S. Attorney. To allow Essayli to continue with the prosecution of Mr. Rojas permits him to exercise power he does not lawfully possess. Essayli lacks the authority to prosecute this action and any actions he takes towards that end are *ultra vires* (i.e. done beyond his legal power or authority.) *See, e.g., United States v. Trump*, 730 F.Supp.3d 1245, 1302 (S.D. Fla. 2024). In such cases, which necessarily involve a "Government actor's exercise of power that the actor did not lawfully possess," the proper remedy is invalidation of the *ultra vires* action. *Collins v. Yellen*, 594 U.S. 220, 258 (2021) (collecting cases); *see id*. at 276–83 (Gorsuch, J., concurring). Invalidation "follows directly from the government actor's lack of authority to take the challenged action in

the first place. That is, winning the merits of the constitutional challenge is enough." *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (Jones, J., concurring).

**D. The Court should issue all appropriate remedies for Mr. Essayli's unlawful actions and supervision.**

Because Mr. Essayli is not validly serving as the acting U.S. Attorney, the Court should apply appropriate remedies to address his unlawful actions and supervision. *See Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("One who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."); *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (similar). In addition to any other relief the Court thinks proper, it should dismiss the indictment against Mr. Rojas.

When an "exercise of prosecutorial power has not been authorized by law," as one district court recently explained, "the Court sees no way forward aside from dismissal" of the indictment. *United States v. Trump*, 740 F. Supp. 3d 1245, 1302 (dismissing "Special Prosecutor" Jack Smith's indictment of the former president because of his invalid appointment), *appeal dismissed*, No. 24-12311, 2025 WL 2017539 (11th Cir. Feb. 11, 2025). Given Mr. Essayli's role in supervising this ongoing prosecution, it is being pursued without lawful authority, and this Court should dismiss the indictment.

The Ninth Circuit has explained that dismissal is available "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)).

All three factors are present here. A private citizen—not lawfully appointed to any

government position—is purporting to wield one of the most powerful offices in our criminal-justice system. Other private individuals' liberty is on the line. Essayli's conduct therefore violated—and daily continues to violate—their rights under the Due Process and Appointments Clauses, including to prosecution and the deprivation of liberty only at the hands of lawfully authorized officials. *See* U.S. Const. art. II, § 2, cl. 2; U.S. Const. amend. V; *Donziger v. United States*, 143 S. Ct. 868, 870 (2023) (Gorsuch, J., dissenting from the denial of cert.)

These violations are accompanied by a corresponding threat to court integrity and a grave need to deter persistent unlawful conduct. The Court should consider that this is no mistake or technicality: the administration intentionally performed what it openly described as a "trick" and what has turned out—in at least five judicial districts—to be an end-run around fundamental statutory and constitutional safeguards.

The dismissal should be with prejudice. To impose that remedy, the Court need not find that it is "the only remedy"—just that "no lesser remedy will fully address the damage caused by the government's misconduct." *Bundy*, 968 F.3d at 1043. "All actions that flowed from his defective appointment. . . were unlawful exercises of executive power." *Trump*, *supra*, 740 F. Supp. 3d at 1303.[7] As the *Trump* Court explained, lesser remedies may be appropriate where the defect is a technical one that does not affect whether an individual is lawfully serving in the relevant office. 740 F. Supp. 3d at 1302 n.62. But that "is not the case here": where the matter goes to the core of appointment," *id.*, and where the violations infect "[a]ll actions that flowed from [the] defective appointment," there is "no alternative course"

---

[7] *See also United States v. Williams*, 65 F.R.D. 422, 448–49 (W.D. Mo. 1974) (dismissing with prejudice because the prosecutors lacked authority to act within the district); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Ohio 1928) (setting aside the indictment for similar reasons but failing to specify whether the remedy was with or without prejudice); *United States v. Rosenthal*, 121 F. 862, 873–74 (C.C.S.D.N.Y. 1903) (similar).

other than dismissal, *id.* at 1303.

**II. Funding an Unlawfully Designated U.S. Attorney and His Office Violates the Appropriations Clause of the U.S. Constitution.**

By continuing to fund Essayli, who is not lawfully appointed, and his office, including Assistant AUSA's, over which he has no lawful authority, DOJ is spending funds that have been appropriated by Congress in violation of the Appropriations Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law ...."). This "straightforward and explicit command ... means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (citation omitted). "Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." *Id.*

The Appropriations Clause plays a critical role in the Constitution's separation of powers among the three branches of government and the checks and balances between them. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *Id.* at 425. The Clause has a "fundamental and comprehensive purpose ... to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Id.* at 427–28.

Current funding for the U.S. Attorney's Office for the Central District of California is authorized by Public Law 119-4, the Full-Year Continuing Appropriations and Extensions Act, enacted March 15, 2025, which made continuing appropriations to the Department of Justice

("DOJ") for the fiscal year ending September 30, 2025.[8] The DOJ tasks the Executive Office for the United States Attorneys ("EOUSA") with managing and distributing the appropriation made by Congress to the United States Attorney's Offices throughout the country:

> The Director of EOUSA is the official responsible and accountable for the appropriation of the Offices of the United States Attorneys. Each United States Attorney has been delegated authority to manage the funds/budget of his/her office within certain limitations. That delegation is normally administered through the administrative staff of the Office of the United States Attorney. Financial expenditures should remain consistent with the delegations of each office and within relevant guidelines, regulations, and statutes.

Justice Manual 3-8.100.

Pursuant to the Justice Manual, the U.S. Attorney manages the funds and budget of his office. But presently, the Central District of California does not have a lawfully appointed U.S. Attorney, rather, it has an improperly designated private citizen purporting to lead and manage the office. This private citizen has no authority to spend funds authorized by Congress for the exclusive use of the lawfully appointed U.S. Attorney. The use of these funds by a private citizen in this manner violates the Appropriations Clause, providing a separate, independent basis to dismiss the indictment against Mr. Rojas. *Compare United States v. Trump*, *supra*, 740 F.Supp.3d at 1306-1307.

**CONCLUSION**

The Court should dismiss the indictment against Mr. Rojas with prejudice.

Dated September 11, 2025 Respectfully submitted,

*/s/ Amy E. Jacks*
Amy E. Jacks

*/s/ Mark Windsor*
Mark Windsor

Attorneys for Defendant RONNY ROJAS

[8] The basis of funding for the Fiscal Year beginning October 1, 2025 is uncertain as of the date of this motion.